1

2

3          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF WASHINGTON

4

| | |
|---|---|
| JASON LEE SUTTON, | No.    2:13-CV-5064-SMJ |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, BERNARD WARNER, in his individual and official capacities, RAMON RUIZ, in his individual and official capacities, MARINA FRANKLIN, in her individual and official capacities, HERBERT PENROSE, in his individual and official capacities, LYNN CLARK, in her individual and official capacities, and LEE YOUNG, in his individual and official capacities, | |
| Defendants. | |

16          Before the Court, without oral argument, is Defendants' Motion for

17    Summary Judgment, ECF No. 146. Defendants argue summary judgment is

18    appropriate because (1) Plaintiff cannot establish that Defendants consciously

19    disregarded an excessive risk of harm by putting his name in the Initial Serious

20    Infraction Report, (2) Plaintiff cannot establish that Defendants Warner, Clark,

ORDER - 1

Franklin, Young or Penrose's personal participation, (3) Washington State is the real party in interest for Plaintiff's official capacity and Department of Corrections (DOC) claims for retroactive relief, and (4) Defendants are entitled to qualified immunity. Having reviewed the pleadings and the file in this matter, the Court is fully informed and grants Defendants' motion.

**A.    Procedural History[1]**

Plaintiff, an inmate proceeding *pro se* and *in forma pauperis*, commenced this action against Corrections Officer Ramon Ruiz on June 10, 2013, alleging Eighth Amendment violations. ECF No. 1 at 10-11. Plaintiff amended his Complaint to add a claim under the Washington Public Records Act. ECF No. 25 at 17. The Court dismissed Plaintiff's Amended Complaint but granted him leave to amend his Eighth Amendment claim. ECF No. 69 at 18. Specifically, the Court indicated that in light of a physical confrontation with another inmate, Plaintiff could possibly survive dismissal if he pled facts sufficient to establish that Defendant Ruiz knew of the alleged risk to Plaintiff's safety. *Id.* at 15.

On May 22, 2014, Plaintiff filed his Second Amended Complaint, ECF No. 70. In addition to Defendant Ruiz, Plaintiff added Bernard Warner, the Secretary of the DOC, Stephen D. Sinclair, the Superintendent of the Washington State

---

[1] Because Plaintiff appears *pro se*, the Court liberally construes his pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Penitentiary in Walla Walla,[2] and Scott Lowder, the Shift Lieutenant at the Washington State Penitentiary. In his Second Amended Complaint, Plaintiff reasserted his Eighth Amendment claim and alleged that Defendants' conduct violated the Washington Administrative Code (WAC) and constituted negligence under state law. ECF No. 70 at 33-40. The Court dismissed Plaintiff's claims against Defendant Sinclair and the WAC and negligence allegations. ECF No. 80 at 16. The Court determined Plaintiff's accusations against Defendant Sinclair were conclusory and insufficient to survive a motion to dismiss. *Id*. at 8. In addition, the Court found that Plaintiff had not stated a claim under the WAC and dismissed the negligence action because he previously conceded the claim. *Id*. at 16.

With his surviving claims, Plaintiff was granted leave to amend and file a Third Amended Complaint, which he did on March 18, 2015. Plaintiff removed Defendant Lowder from the action and added the DOC; Marina "House" Franklin, a Corrections Officer at the Washington State Penitentiary; Herbert Penrose, the West Complex Shift Lieutenant at the Washington State Penitentiary; Lynn Clark, the Manager of the Baker, Adams, and Rainier Units at the Washington State Penitentiary; and Lee Young, the West Complex Grievance Coordinator at the Washington State Penitentiary. ECF No. 135 at 1-2; ECF No. 141 at 2-12.

[2] Plaintiff is currently incarcerated at this correctional facility.

ORDER - 3

1    Plaintiff reasserts his claims under 42 U.S.C. § 1983, arguing primarily that

2   Defendants violated his Eighth Amendment right to be free from cruel and

3   unusual punishment by naming him as an informant on an infraction report served

4   to another inmate and failing to protect him of dangers that arose due to being

5   labeled a "snitch" because of the infraction report. *Id.* at 30-33. In addition,

6   Plaintiff has added claims that Defendants violated his Eighth Amendment right to

7   privacy, Fourth Amendment right to be free from cruel and unusual punishment,

8   and Fourth Amendment right to privacy. *Id.* at 30.[3] Finally, Plaintiff revives WAC

9   claims the Court previously dismissed and adds claims under the Revised Code of

10   Washington (RCW).[4] *Id.* at 32.

    In their Motion for Summary Judgment, Defendants argue that they did not

12   violate Plaintiff's Eighth Amendment rights by releasing the Report. ECF No.

13   146. This is because Plaintiff notified staff of an offender being "out of bounds," a

14   violation often reported by offenders and one not considered to include

15   "confidential information." Accordingly, Defendants maintain that they did not

16   violate Plaintiff's rights by putting his name on the Report. *Id.* at 6-12.

---

[3] Although Defendants do not address Plaintiff's Fourth Amendment claims and Eighth Amendment right to privacy claim, Plaintiff has not alleged an invalid "search and seizure." *See Oliver v. United States*, 466 U.S. 170 at 182-83 (1984); *See Katz v. United States*, 389 U.S. 347, 353 (1967). Second, the Fourth Amendment does not grant Plaintiff a reasonable expectation of privacy in prison. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Third, the Fourth Amendment does not protect against cruel and unusual punishment. Finally, the Eighth Amendment does not grant prisoners a right to privacy. Because these claims do not exist, the Court liberally construes these claims as restatements of Plaintiff's Eighth Amendment failure to protect claim.

[4] Plaintiff's Third Amended Complaint contains six "counts." ECF No. 141 at 30-33. A liberal construction of this Complaint, however, leads this Court to discern the actionable claims listed.

ORDER - 4

Defendants Warner, Clark, Franklin, Young, and Penrose also assert that Plaintiff failed to establish their personal participation, which warrants dismissal of all Eighth Amendment claims against them in their individual capacities. *Id.* at 13-16. In addition, Defendants insist that Plaintiff's claims for retrospective relief should fail because the State of Washington is the real party in interest for claims against DOC and Defendants Warner, Clark, Franklin, Young, Penrose, and Ruiz in their official capacities. *Id.* at 16. In the alternative, Defendants Warner, Clark, Franklin, Young, Penrose, and Ruiz maintain that they are entitled to qualified immunity. *Id.* at 16-20. Defendants also state that Plaintiff's state law claims do not contain any substantive rights nor provide a cause of action. *Id.* at 2 n.1.

**B.   Factual History[5]**

On September 17, 2011, Plaintiff observed Offender Howard Richardson enter Offender Travis Newell's cell in the Rainier Unit (Unit) at the Washington State Penitentiary. ECF No. 141 at 15. Plaintiff perceived either a Prison Rape Elimination Act (PREA) violation or a fight occurring between the two offenders and contacted Defendant Ruiz, who was working in the Unit's control booth. ECF 161-1 at 4. Defendant Ruiz called for floor officers to conduct a tier-check. *Id.* 5. The floor officers walked through the tier but did not inspect Offender Newell's

---

[5] This section is based on all factual allegations made in and after Plaintiff's Third Amended Complaint, ECF No. 141. *See Alaska v. United States* 545 U.S. 75, 82 (2005). In ruling on the motion for summary judgment, the Court has considered the facts and all reasonable inferences have been made in light most favorable to the nonmoving party. *See Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).

ORDER - 5

cell and Defendant Ruiz did not instruct the officers to perform a more thorough inspection of the cell. *Id.* After, Defendant Ruiz called for the Unit's recreation time, which allowed numerous offenders out of their cells. *Id.* at 4-5. At this time, Defendant Ruiz and the floor officers noticed Offender Richardson exiting Offender Newell's cell and immediately placed him in the Unit's holding cell. *Id.* at 5. Defendant Ruiz then conducted a brief investigation that consisted of asking both offenders one question: "why were you in the cell together?" *Id.* Both offenders stated "that Richardson was there to scare Newell for his [b]irthday." ECF No. 141 at 16. Although Plaintiff suggested a PREA violation occurred, Defendant Ruiz did not conduct a PREA investigation and allowed Offender Richardson to return to his cell. ECF No. 161-1 at 7.

After realizing that Defendant Ruiz had not conducted a PREA investigation, Plaintiff drafted a Staff Misconduct Complaint and Witness Statement for a PREA complaint. *Id.* at 8. The next day, Plaintiff submitted his PREA complaint to Defendant Franklin, who was in the Unit's Officer Station with Defendant Ruiz. *Id.* At that time, Plaintiff conversed with Defendant Franklin about the possible PREA incident and Defendant Ruiz's failure to gather and preserve evidence. *Id.* Defendant Franklin read Plaintiff's PREA complaint and sent it to Defendant Clark for further review. *Id.* at 9. Defendant Clark

investigated Plaintiff's PREA complaint and found no evidence substantiating the PREA allegation. ECF No. 151 at 7.

After Plaintiff reported the possible PREA incident on September 17, 2011, Defendant Ruiz determined that Offender Richardson violated WAC 137-25-030(709) for being out of bounds and drafted the Report. ECF No. 161-1 at 22. On September 18, 2011, Defendant Ruiz submitted a draft, which named Plaintiff as the eye witness, to Defendant Penrose for review. *Id.* at 11. The next day, Defendant Penrose obtained and reviewed the Report and determined that it adhered to DOC policy and the WAC. *Id.* at 12. Defendant Penrose did not order that Plaintiff's name be removed or redacted to preserve his confidentiality and ordered the Report to be served on Offender Richardson. *Id.* at 12-13.

Offender Richardson received the Report on September 21, 2011. In relevant part, the Report stated:

> On 9/17/11 at approximately 1820 hours, I/m Sutton, Jason . . . notified myself C/O Ruiz, Ramon #7477 while working in the Control Booth in Rainier Unit, that he thought he saw another inmate entering RA209 after mainline and to keep an eye open to catch him at yard gate. At that point, I contacted the floor officers to conduct a tier check, nothing was found during this tier check. I then ran a yard gate, when I opened the cell door in RA209 inmate Richardson, Howard . . . came out of RA209 where inmate Newell, Travis . . . lives. . . . I/m Richardson was placed in restraints and escorted to the holding cell . . . I C/O Ruiz asked I/m Richardson what was he doing in I/m Newell's cell. I/m Richardson as well as I/m Newell told me that I/m Richardson was just trying to scare I/m Newell for his birthday.

ECF No. 161-1 at 22. To Plaintiff, the presence of his name on the report exposed him as "snitch" and an "informant" to other prisoners. *Id.* at 13. Accordingly, Plaintiff requested a meeting Mark Arroyo, his counselor, and Defendant Clark soon after Offender Richardson was served. *Id.* at 15. Both Defendant Clark and Mark Arroyo agreed that an internal investigation into Defendant Ruiz's actions needed to occur. *Id.* But, Defendant Clark advised Plaintiff to not file his Staff Misconduct Complaint until the investigation was complete. ECF No. 141 at 23.

As a result, Plaintiff waited until January 1, 2013 to submit his Staff Misconduct Complaint, which expressed his concern regarding being labeled a "snitch." *Id.* at 24, 61. On January 3, 2013, Defendant Young received Plaintiff's Staff Misconduct Complaint and determined it was "not a grievable issue" because he submitted it outside the 20 working-day timeframe. *Id.* at 61. Plaintiff appealed Defendant Young's decision and, on February 20, 2013, the Grievance Program Manager affirmed Defendant Young's decision. *Id.* at 65-66.

According to Plaintiff, other offenders have teased, taunted, verbally harassed, bullied and physically confronted because of the Report. *Id.* at 17. However, there is very little concrete evidence of this in the record. Plaintiff explains the failure to report these supposed threats against him was a result of not "trusting [prison] officials to keep [such] reporting private and confidential" *Id.* Plaintiff maintains, however, that he informally reported concerns about his

security and safety to prison officials before he was involved in a physical altercation with Offender James Reeder on October 22, 2013. *Id.* at 14-15.

Plaintiff represents that Offender Reeder had bullied him for some time and, on the day of the incident, walked over to Plaintiff during the evening meal, stood in front of him, verbally abused him for being a snitch, and threatened him with physical harm. ECF No. 141 at 25. After some words between the two, Plaintiff "launched a preemptive attack" on Offender Reeder and fractured his own right wrist. *Id.* at 25-26. The next day, DOC placed Plaintiff in Segregation. *Id.*

Plaintiff tried to voice his concerns through official channels after the altercation with Offender Reeder. For example, at some point after February 19, 2014, Plaintiff contacted the PREA hotline and spoke with PREA liaison, Lori Scamahorn. *Id.* at 16; ECF No. 161-3 at 96-98. However, Ms. Scamahorn dismissed Plaintiff's concerns because the September 17, 2011 incident Plaintiff suspected was a PREA violation did not meet the criteria for sexual misconduct. *Id.* at 98. In addition, Plaintiff voiced his concerns about the Report and the PREA investigation to Defendant Warner on December 3, 2014. ECF 161-4 at 25-29. Ultimately, Plaintiff believes Defendants disregarded the dangers he faced because of the Report for at least two years before the incident with Offender Reeder. ECF No. 161-1 at 18.

///

ORDER - 9

**C.    Standard for Summary Judgment**

The Court may grant judgment in favor of a party that demonstrates "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

A fact is material if it could affect the outcome of the suit under governing law. *Id.* A dispute involving such facts is genuine when a reasonable jury could find in favor of the non-moving party. *Id.* The Court determines if a fact is material by viewing it in the light most favorable to the non-moving party. *Young v. United Parcel Service, Inc.*, 135 S.Ct. 1338, 1347 (2015).

Allowing a plaintiff to create a factual dispute solely for the purposes of summary judgment "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (internal quotation marks and

citation omitted). Thus, the Court disregards self-serving declarations that state conclusions and not admissible facts. *Nigro v. Sears, Roebuck, & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)). Although the non-moving party's elaboration on prior testimony may result in minor inconsistencies that are honest mistakes, a material fact cannot be created by flatly contradicting prior testimony. *Nelson v. City of Davis*, 571 F.3d 924, 927-28 (9th Cir. 2009).

Plaintiff's response to Defendants' Motion for Summary Judgment includes a letter supposedly sent to Defendant Ruiz and other prison officials dated September 27, 2011. In the letter, Plaintiff requests protection from any retaliation by other prisoners that may occur due to being exposed as an informant. ECF No. 161-1 at 68. However, in one of his declarations, Plaintiff states that he did not report any attempts of physical violence, bullying, or verbal harassment. ECF No. 161-1 at 17. Nor does Plaintiff provide evidence that shows Defendant Ruiz or any prison official received the letter he wrote. Thus, the Court disregards the letter because of the contradiction between it and Plaintiff's other evidence.

## D.    State Law Claims

In his Third Amended Complaint, Plaintiff alleges Defendants violated RCW 9A.80.010 and 42.20.100 as well as WAC 137.28-270 and 137.28-290. ECF No. 141 at 32. However, no relief is available under these provisions because

they do not grant Plaintiff any substantive rights or causes of action. First, RCW 9A.80.010 defines the criminal act of official misconduct by a public servant and RCW 42.20.100 describes the criminal act of failure to perform a duty by a public officer. These are criminal statutes that Plaintiff cannot enforce. Second, WAC 137-28-270 establishes the disciplinary process for a serious infraction in a prison facility and WAC 137-28-290 explains the process for disciplinary hearings. Plaintiff was not cited for a serious infraction and was not subjected to a disciplinary hearing, which makes these sections of the WAC inapplicable. Accordingly, the Court grants judgment in favor of Defendants on all state law claims because no relief is possible.

**E.    Section 1983 Claims**

In his Third Amended Complaint, Plaintiff also brings action under § 1983, alleging a violation of his Eighth Amendment right. Plaintiff sues Defendants both in their official and individual capacities. Plaintiff's burden at the summary judgment stage is met if he shows genuine issues of material fact exist as to whether Defendants (1) violated his right protected by the Constitution or laws of the United States; and (2) acted under the color of state law when the violation occurred. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Defendants have admitted, and the Court agrees, that they were acting under color of state law in administering the prison.

1    *See* ECF No. 145 at 13. Thus, the Court need only determine whether a reasonable

2    jury could conclude that Defendants violated Plaintiff's Eighth Amendment right

3    to protection. *See Hafer v. Melo*, 502 U.S. 21, 26-27 (1991).

4        1.    Official Capacity

5        States and state officials sued in their official capacity for damages are not

6    persons for purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58,

7    71 (1989); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). There is no

8    question that DOC is an arm of Washington. *Garnica v. Wash. Dept. of Corrs.*,

9    965 F. Supp. 2d 1250, 1276-77 (W.D. Wash. 2013); *See Alabama v. Pugh*, 438

10   U.S. 781, 782 (1978) (per curiam); *Hale v. Arizona*, 993 F.2d 1387, 1399 (9th Cir.

11   1993) (en banc).

12       But, state officials sued in their official capacity for injunctive relief are

13   persons for purposes of § 1983. *See Will*, 491 U.S. at 71 n.10; *Flint*, 488 F.3d at

14   825. In an official-capacity suit, the Plaintiff must demonstrate that a policy or

15   custom of the governmental entity of which the official is an agent was the

16   moving force behind the violation. *Hafer*, 502 U.S. at 25. Here, the Plaintiff has

17   not alleged, much less demonstrated, that the policy of placing the names of

18   witnesses to out-of-bounds infraction reports resulted in a constitutional violation.

19   *See* ECF No. 141. Accordingly, no prospective or retroactive relief is possible

20   against Defendants in their official capacity.

2.    <u>Personal Capacity</u>

State officials sued in their personal capacity are persons for purposes of § 1983. *See Hafer*, 502 U.S. at 31; *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Liability in a personal-capacity suit can be demonstrated by showing that the official caused the alleged constitutional injury. *See id.* at 166.

a.    <u>Causation</u>

A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Id.* at 1183 (quoting *Johnson*, 588 F.2d at 743).

Thus, to survive a motion for summary judgment, Plaintiff must show that a genuine issue of material fact exists as to whether each Defendant caused the

deprivation complained of. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Graham*, 473 U.S. at 166. Plaintiff cannot meet this burden through a theory of vicarious liability; he must demonstrate how a reasonable jury could determine each Defendant's individual actions or omissions failed to protect him from a serious risk of harm. *Lemire v. Cal. Dept.of Corrs. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiff believes that Defendant Franklin can be held liable because he submitted the PREA Complaint to her. ECF 161-1 at 7-9. Likewise, Plaintiff argues that Defendant Clark is responsible because Defendant Franklin forwarded him the PREA Complaint. *Id.* at 9. Plaintiff thinks that Defendant Young participated in the alleged injury because he dismissed the Staff Misconduct Complaint in 2013. *Id.* at 18, 61, 65.

In his Third Amended Complaint, Plaintiff lists the Report as the exclusive source of his alleged injuries. Nothing contained in the record suggests that Defendants Clark, Franklin, or Young had any personal participation in the drafting, reviewing, or service of the Report. Accordingly, Plaintiff's claims against these Defendants necessarily fail.

Further, Plaintiff argues that Defendant Warner personally participated by failing to properly train and supervise prison officials. ECF No. 141 at 28-29. Though a causal connection can be established through deficiencies in training,

supervising, or controlling subordinates, it cannot be through a theory of vicarious liability. *See Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000). There still must be some sort of concrete action or omission. Here, Plaintiff puts forth no evidence showing that Defendant Warner trained, supervised, or instructed or trained prison staff to include the names of witnesses or informants in Serious Infraction Reports. Instead, Plaintiff concludes that because the Report listed him, Defendant Warner must have trained or supervised his subordinates improperly. This amounts to nothing more than a vicarious liability argument. Accordingly, Plaintiff's claim against Defendant Warner must also fail.

Causation has, however, been sufficiently established for Defendants Penrose and Ruiz. Defendant Ruiz drafted the Report at issue in this case. Defendant Penrose was the Infraction Review Officer who green lit the Report before Offender Richardson received it. ECF No. 148 at 4.[6] Accordingly, the Court must determine whether including Plaintiff's name on the Report constituted a deprivation of Plaintiff's Eighth Amendment right.

### b.    *Deprivation of Plaintiff's Eighth Amendment Right*

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations and quotations omitted). Failure to protect a prisoner can "rise to an

---

[6] DOC Policy 460.000(VI)(B) requires Initial Serious Infraction Reports to be reviewed by an Infraction Review Officer if the infraction requires formal resolution.

Eighth Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). Also, Plaintiff must demonstrate that the prison officials were the actual and proximate cause of his injuries. *Lemire*, 726 F.3d at 1074.

### i.    *Objectively Serious*

To establish that his injury is objectively serious, Plaintiff must show that he suffered physical injury, severe emotional pain and suffering, or something else sufficiently serious. *Watison v. Carter*, 669 F.3d 1108, 1112-13 (9th Cir. 2012). However, Plaintiff does not have to demonstrate actual injury; it is enough to establish exposure to the risk of serious harm. *Lemire*, 726 F.3d at 1076. It is well established that being revealed as a snitch may be sufficient to meet this standard. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989).

Here, Plaintiff informed prison officials that another offender was "out of bounds." This occurs when an inmate is "in another offender's cell or . . . in an area in the facility with one or more offenders without authorization." WAC 137-25-030(709). "Out of bounds" is a serious infraction and officials are required to include the names of witnesses but exclude the names of confidential informants on the reports. WAC 137-28-270(1). Staff usually grant confidentiality only if the

inmate's information "relate[s] to a serious threat to the safety or security of the institution." ECF No. 149 at 2.

Defendants assert that an "out of bounds" violation is a "straightforward violation" and informants are not entitled to confidentiality. ECF No. 148 at 3. However, Plaintiff notified Defendant Ruiz through his unit intercom and appears to have maintained confidentiality until the Report disclosed him as the informant. *Id*. Given that reasonable minds could differ as to whether Plaintiff was a confidential informant and whether listing him on the Report exposed him to a serious risk of harm, Plaintiff meets the "objectively serious" requirement for purposes of summary judgment.

*ii.    Deliberate Indifference*

To establish that Defendants acted with deliberate indifference, Plaintiff must show that the risk was obvious or that prison officials were aware of the risk; and that the prison officials had "no reasonable justification for exposing the inmate to the risk." *Lemire*, 726 F.3d at 1078 (citing *Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010)). An inmate can present evidence of "very obvious and blatant circumstances" to establish that the prison official knew the risk existed. *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) (internal quotation marks and citation omitted). In addition, Plaintiff must show that exposure to the probability

of harm was not "a proportionate response to the penological circumstances in light of the severity of the risk." *Lemire*, 726 F.3d at 1079.

A risk of harm is obvious "in light of reason and the basic general knowledge that is expected, at a minimum, of an individual performing the functions of that job." *Thomas*, 611 F.3d at 1151. Therefore, a reasonable jury could find that if Defendants Ruiz and Penrose exposed Plaintiff as a snitch, it was obvious that Plaintiff faced the possibility of inmate retaliation. *See Lemire*, 726 F.3d at 1078; *Valandingham*, 866 F.2d at 1139.

Despite the possibility of an obvious risk, Plaintiff does not provide facts that could allow a jury to reason that Defendants Ruiz and Penrose recklessly left Plaintiff's name on the Report. In *Valandingham*, the Ninth Circuit reversed summary judgment because the inmate produced facts that could have shown prison officials subjected him to inmate retribution by *intentionally exposing* him as a snitch. *Id.* Likewise, prison officials in *Thomas* knew depriving an inmate of out-of-cell exercise for almost fourteen months could cause substantial physical and mental harm. 611 F.3d at 1156.

Here, the situation is markedly different than those in *Valandingham* and *Thomas*. Defendant Ruiz asserts that he had no reason to believe that listing Plaintiff's name on the Report would subject him to a serious risk of harm because an "out of bounds" violation is a "straightforward rule violation." ECF No. 148 at

3. Further, Defendant Ruiz did not consider Plaintiff's information confidential because it did not pose a "serious threat to the safety and security of the institution" and was not related to a WSP Intelligence and Investigations Unit. *See id.* at 2; *see also* ECF No. 149 at 2. Indeed, given the record, the Court finds that Defendant Ruiz's and Penrose's acts were consistent with the procedure for serious infractions.

Most significantly, Plaintiff has not presented the Court with any facts that support a finding of recklessness. His assertion that Defendants acted with deliberate indifference is supported only by declarations from two inmates who believe that a prison officer would only expose an inmate as a snitch to cause harm. ECF No. 161-2 at 11, 36. These declaration, however, are written in general terms and presuppose an intentional disclosure or labeling of an inmate as a snitch. It is undisputed that Defendants have not done so. Further, it is undisputed that they did not act recklessly. Accordingly, the Court grants summary judgment for Defendants Ruiz and Penrose.

### iii.    *Actual and Proximate Cause*

Even if Plaintiff had produced enough evidence to establish a genuine issue of fact as to deliberate indifference, he still could not establish causation. Plaintiff claims the Report caused him to be exposed to a serious risk of harm when Offender Reeder supposedly called him a snitch before their altercation in 2013.

ECF No. 141 at 25. But, a reasonable fact finder could not determine that the Report was the proximate cause of Offender Reeder's actions given the record. Plaintiff has not provided any evidence showing that Offender Reeder was aware of the Report. Further, the two-year disconnect between their altercation and when the Report issued strains any causal link. Finally, Plaintiff has not alleged, let alone factually substantiated, any other specific instance or instances where the Report actually caused injury. Because of this, a reasonable jury could not infer that Defendants Ruiz and Penrose failed to protect Plaintiff by serving the Report to Offender Richardson, which provides yet another basis for granting summary judgment.

**F.    Conclusion**

Because Plaintiff cannot maintain his state law claims, Defendants have demonstrated that no genuine dispute of a material fact exists, and that Plaintiff has failed to establish an Eighth Amendment failure to protect claim, summary judgment is appropriate. Plaintiff has produced no facts that could establish that any of the Defendants acted with deliberate indifference.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion for Summary Judgment, **ECF No. 146**, is **GRANTED.**

**2.**    All claims against Defendants are **DISMISSED WITH PREJUDICE**.

**3.**    The Clerk's Office is directed to enter **JUDGMENT** for Defendants.

**4.**    All pending motions are **DENIED AS MOOT**.

**5.**    All pending deadlines and hearings are **STRICKEN**.

**6.**    The Clerk's Office shall **CLOSE** this file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel and to Plaintiff.

**DATED** this 11th day of August 2015.

_____
SALVADOR MENDOZA, JR.
United States District Judge

Q:\SMJ\Civil\2013\Sutton v. Ruiz-5064\ord.grant.msj.ext.docx

ORDER **-** 22